UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
OLUSHOLA AKEEM,

              Plaintiff                      **MEMORANDUM & ORDER**

           - against -                          10 CV 4498 (RJD)

UNITED STATES OF AMERICA,

              Defendant,
-----------------------------------------------------------------x
DEARIE, District Judge.

      Olushola Akeem moves pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure for the return of property seized by the United States Customs and Border Protection ("CBP") during his arrest in 2008. Because the criminal proceeding resulting from that arrest has terminated, see United States v. Akeem, 08 CR 180 (RJD), ECF No. 16, the Court construes Akeem's motion as a civil action in equity. See Diaz v. United States, 517 F.3d 608, 610 (2d Cir. 2008) ("A Rule 41(g) motion that is brought after the criminal proceeding is over is treated as a civil equitable action"). The government agrees that the 41(g) motion should be so construed but moves to dismiss the equitable action for lack of jurisdiction or, in the alternative, for summary judgment.

      For the reasons that follow, the government's motion is granted in part and denied in part.

## BACKGROUND

The following facts are either not disputed or conclusively established by the record.

**A.    The Terminated Criminal Proceeding**

      Olushola Akeem was arrested on February 21, 2008, shortly after his arrival at John F. Kennedy Airport on a flight from Nigeria, because he presented a counterfeit passport to a CBP

officer in an effort to gain entry into the United States. At Akeem's arraignment later that day, Magistrate Judge Joan M. Azrack issued a permanent order of detention remanding him to the custody of the United States Marshals Service ("USMS"). On June 30, 2008, Akeem entered a plea of guilty before Magistrate Victor Pohorelsky to the offense of using a falsified passport in violation of 18 U.S.C. §1543. On September 4, 2008, this Court accepted the plea and sentenced Akeem to time served and a three-year term of supervised release. See U.S. v. Olushola Akeem, 08 CR 180, ECF Nos. 3, 5, 13-16.

Akeem's custodial status, despite apparent discrepancies in the parties' papers on the subject, is established as a matter of record. Akeem was housed in the Federal Bureau of Prisons ("BOP")'s Metropolitan Detention Center in Brooklyn ("Brooklyn MDC") from his initial remand on February 21, 2008 through March 3, 2008. On that date, according to the USMS Individual Custody and Detention Report furnished to the Court, Akeem was transferred to a private correctional facility in Queens under contract with the BOP, where he remained until September 8, 2008. On that date, pursuant to the judgment sentencing him to time served, Akeem was turned over to the custody of the United States Immigration and Customs Enforcement ("ICE") for removal proceedings to his native Nigeria.[1]

B.   **The Property Seizure**

At the time of Akeem's arrest, CBP seized and inventoried Akeem's personal effects. These items included a brown Armani duffel bag, various articles of clothing, toiletries, books, a

---

[1] Eventually, on or about July 8, 2010, Akeem was granted political asylum in the United States, and lived and worked in Brooklyn while under supervised release, but now finds himself back in federal custody, having been indicted in this district in July 2011 for possessing counterfeit securities in violation of 18 U.S.C. §513(a). See generally United States v. Akeem Olushola, 11-CR-501 (NGG). Court and Probation records confirm that, although assigned different USMS identification numbers, Olushola Akeem and Akeem Olushola are one and the same individual.

computer bag, a cellphone, a wallet, 22 bills (totaling $1,401) of United States currency, and four bills of foreign currency. CBP provided Akeem with three forms, each of which bears his signature: (1) a form containing the inventory of the seized possessions, (2) a standard Baggage Release Notice (hereinafter, the "Baggage Release"), and (3), a form entitled "Authorization for the Release of Personal Effects Hold Harmless & Release Agreement" (hereinafter, the "Authorization-Release"). (The 3 forms together are Exhibit A to the Declaration of Karen Dugan-Rivera, Director of CBP's Office of Fines, Penalties and Forfeitures ("FP&F") at JFK Airport (hereinafter, the "Dugan-Rivera Declaration").

The Baggage Release describes three ways the passenger can retrieve his property: by going to a particular location to pick it up, designating a representative to do so, or arranging for CBP to ship it. In a paragraph of underlined text appearing just above the line bearing Akeem's signature, the form states that "Any luggage not picked up within one (1) year of the date of seizure/arrest will be considered abandoned and will be forfeited or disposed of by [CBP]."

On the Authorization-Release, Akeem filled in all six of the blanks that asked for his name, but not the other two blanks in the following sentence: "I, Olushola Akeem, hereby authorize _____, residing at _____, to take possession of the above-listed property on my behalf." The Authorization-Release also states that it is "an Agreement between Olushola Akeem . . . and [CBP] and that "(e)ither a CBP Officer or a Notary must witness the signing" of the document, but the lines provided for the CBP's officer's name and signature, and for those of the notary, remain blank.

The Dugan-Rivera Declaration also states that, "[o]n February 21, 2008, Akeem provided CBP with the following as his home address, which was entered into CBP's 'SEACATS' database: 15 Idimu Road, Alimosho, Lagos, Nigeria." The government's papers supply no other

3

particulars about Akeem's furnishing of this address, which does not appear on any of the CBP documents that Akeem signed at the time of the seizure. The government does not assert, and there is nothing in the record to suggest, that Akeem directed CBP to send the seized property to Nigeria.[2]

### C. CBP's Commencement of Administrative Forfeiture Proceedings

On September 12, 2008, while Akeem was in ICE custody, CBP sent to Akeem's Nigerian address several documents relating to the seized property, including the Notice of Abandonment form and an additional Hold Harmless and Release of Personal Effects Form (together, Exhibit C to the Dugan-Rivera Declaration). Combined, the documents make specific reference to the property "seized on February 21, 2008 at JFK Airport" and explain that Akeem "may choose to abandon or reclaim" that property by following the procedures detailed in the forms, and that "either decision requires a response from [him] within thirty (30) days." The government's papers assert only that the furnishing of these materials was in compliance with an internal CBP directive, but the record makes clear that with this mailing, CBP was commencing administrative forfeiture proceedings. See 19 U.S.C. § 1607 (requiring that "[n]otice of seizure" be "sent to" persons with an interest in the seized property); 19 C.F.R. § 162.45 (describing the contents of the notice required by 19 U.S.C. § 1607).[3]

---

[2] In the reply submission that Akeem filed in response to the government's motion papers, which included the aforementioned documents, Akeem makes the general assertion that he was not given a receipt for his baggage. He does not, however, actually dispute that the signatures on the forms are his or that he furnished the Nigerian address to CBP officers. Accordingly, the Court finds that there is no genuine dispute as to these facts.

[3] The publication component of the statutory notice requirement is not at issue in this case. See generally 19 U.S.C. § 1607; 19 C.F.R. § 162.45; Exhibit D to Dugan-Rivera Declaration (Notice of Seizure and Intent to Forfeit posted at JFK airport on February 3, 2009).

The documents that CBP mailed to Akeem at his Nigerian address were returned to CBP on September 17, 2008, stamped "refused."

As noted, that mailing to Nigeria occurred on or about the fourth day after Akeem's transfer from one branch of the federal government (USMS) to another (ICE). CBP claims that, in selecting Nigeria as the place of mailing, it was relying on a search it had conducted for Akeem on the BOP's inmate locator website, which disclosed that Akeem had been "released" on March 3, 2008. The record shows, however, that a CBP agent performed that search on March 31, 2008, five and half months before CBP sent notice of the commencement of forfeiture proceedings to Nigeria. There is no evidence suggesting that CBP checked any other records at that time, or at any later time, even after the mailing to Nigeria was returned.

On March 17, 2009, having received no claim or assertion of interest in the seized property, CBP declared the property administratively forfeited pursuant to 19 U.S.C. §§ 1608-1610. See Exhibit E to Dugan-Rivera Declaration. The property was ordered destroyed on March 20, 2009, and the destruction occurred on March 26, 2009. (See Exhibit E to Dugan-Rivera Declaration).[4]

### DISCUSSION

**I.  Rule 41(g)**

Rule 41(g), entitled "Motion to Return Property," provides that "[a] person aggrieved by . . . the deprivation of property may move for the property's return" by filing a motion "in the

---

In any event, "notice by publication is not sufficient with respect to an individual whose name and address are known or easily ascertainable." Robinson v. Hanrahan, 409 U.S. 38, 40 (1972).

[4] Curiously, the inventoried *currency* taken from Akeem is not mentioned in any of the notices, but the Court will assume that the seized currency is included in the forfeiture notices but that it was, upon forfeiture, disbursed rather than destroyed. See generally Diaz, 517 F.3d at 611 (treating seized currency in the 41(g) context, illustrates that forfeited currency is disbursed rather than destroyed).

district where the property was seized." Fed. R. Crim. P. 41(g). Destroyed property and disbursed currency of course cannot be returned, which raises the question whether the Court has subject matter jurisdiction over a claim for money damages. See, e.g., Diaz, 517 F.3d at 611 (where seized currency was forfeited and disbursed, "all that [41(g) movant] can seek now is to be paid the cash equivalent of the seized currency"). The answer, unequivocally, is that jurisdiction is lacking, and the reason is the sovereign immunity of the United States.

As the Second Circuit explained in Adeleke v. United States, 355 F.3d 144 (2d Cir. 2004), although Rule 41(g) is a vehicle for seeking the return of property, the rule "does not waive the sovereign immunity of the United States with respect to actions for money damages relating to such property." Id. at 151. Accordingly, the Second Circuit held, "federal equitable jurisdiction to order the return of property pursuant to Rule 41(g) . . . does not permit courts to order the United States to pay money damages when, *for whatever reason*, property is not available for Rule 41(g) return." Id. (emphasis added). Four years later, in Diaz, the Circuit refused to create an exception to this principle even for seized currency. 517 F.3d at 614. The Circuit rejected the idea that, for 41(g) purposes, the general fungibility of cash made currency available for 41(g) return even after the seized bills have been disbursed. Id. The Court held that, "[o]nce seized currency has been disbursed and is no longer available, a claim for its return is analogous to any Rule 41(g) claim for the return of property that is no longer at hand: such claims are jurisdictionally barred by the principle of sovereign immunity." Id.

In sum, because the property that Akeem seeks is "not available for Rule 41(g) return," Adeleke, 355 F.3d at 151, whatever jurisdiction the Court has to order 41(g) relief does not serve as a grant of subject matter jurisdiction over a damages claim for the value of that property.

## II. The Federal Tort Claims Act (FTCA) as a Possible Basis of Jurisdiction

Although Akeem styled his claim as a Rule 41(g) motion, the Court must "liberally construe his pro se submissions to 'raise the strongest arguments that they suggest.'" Diaz, 517 F.3d at 614 (internal citation omitted). See also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007) (pro se claim for the return of seized "construe[d] . . .as asserting claims pursuant to the Federal Torts Claim Act and Rule 41(g)"); Diaz, 517 F.3d at 613 (having decided it lacks 41(g) jurisdiction because property not available, treats 41(g) motion as claim under the FTCA); Adeleke, 355 F.3d at 151-154 (on jurisdictionally deficient pro se Rule 41(g) motion for return of destroyed property, Court considers possible due process and other damages claims under the sovereign immunity waivers in the Tucker Act, the "Little Tucker Act," and the FTCA). In light of these authorities, the Court proceeds to consider whether the FTCA's limited waiver of sovereign immunity, 28 U.S.C. §§ 1346(b)(1), 2671-2680, creates jurisdiction for a possible claim under state law for damages for the destroyed property.[5]

The FTCA waives sovereign immunity for, inter alia,

> claims against the United States, for money damages . . . for . . . loss of property . . . caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

---

[5] To be clear, the FTCA does not cover constitutional torts, FDIC v. Meyer, 510 U.S. 471, 477-78 (1994), but instead, through its waiver of sovereign immunity, is a *jurisdictional* grant for a category of claims sounding in local law. See id. The question of sovereign immunity, therefore, is jurisdictional in nature, see, id. at 475, and is to be distinguished from the question of substantive tort liability "under the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Under the facts, the Court shall assume without deciding, solely for the purpose of analyzing the FTCA jurisdictional question, that Akeem would seek to cast his claim as one for negligence or wrongful conversion under New York law.

A category of claim excluded from this waiver, however, is "[a]ny claim arising in respect of . . . the detention of any goods, merchandise, or other property by any officer of customs . . . or any other law enforcement officer.'" 28 U.S.C. § 2680(c). The Supreme Court has construed the detention of goods exception broadly. See Kosak v. United States, 465 U.S. 848, 854 (1984) (the detention of goods exception applies to "any claim 'arising out of' the detention of goods . . . includ[ing] a claim resulting from negligent handling or storage of detained property"); Ali v. Fed. Bureau of Prisons, 552 U.S. 214, 228 (2008) ("Section 2680(c) forecloses lawsuits against the United States for the unlawful detention of property by 'any,' not just 'some,' law enforcement officers").

The Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub.L. No. 106-185, 114 Stat. 202, however, amended section 2680(c) "to create an exception to the exception" that "permit[s] claims against the United States for injury or loss of goods or property in law enforcement custody." Diaz, 517 F.3d at 613. This exception to the exception applies only if a claimant satisfies the four statutory conditions:

> (1) the property was seized for the purpose of forfeiture under any provision of Federal law providing for the forfeiture of property other than as a sentence imposed upon a conviction of a criminal offense;
>
> (2) the interest of the claimant was not forfeited;
>
> (3) the interest of the claimant was not remitted or mitigated (if the property was subject to forfeiture); and
>
> (4) the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a Federal criminal forfeiture law.

28 U.S.C. §2680(c)(1)-(4).

Failure to satisfy even one condition prevents Akeem from availing himself of the

8

CAFRA re-waiver of sovereign immunity. Diaz, 517 F.2d at 613 (court "need not consider each of §2680(c)'s requirements in detail" where "it is immediately clear" that plaintiff "cannot satisfy" one). Here, it is immediately clear that Akeem cannot satisfy the second condition, i.e, that "the interest of the claimant was not forfeited," because the property in question *has* been forfeited. See, e.g., CCS Int'l Ltd. v. United States, 03 CV 0507, 2003 WL 23021951, *4 (S.D.N.Y. Dec. 24, 2003) (Chin, J.) (because "plaintiff's interest in the property already *has* been forfeited," court concludes that the claim fails to satisfy section 2860(c)(2)'s requirement that "the interest of the claimant was *not* forfeited") (emphasis added).[6] See also Wynn v. Missouri Highway Patrol, 2006 WL 1875411, *2 n.1 (W.D. Mo. June 30, 2006) ("Congress amended 28 U.S.C. § 2680(c) in 2000 to give a cause of action to individuals whose property was wrongfully seized, but never actually forfeited . . [T]he 2000 amendment to section 2680(c) is not factually applicable to [the claim at issue] because [the] property was forfeited").

It is equally clear that Akeem cannot satisfy the first requirement, i.e., that his property "was seized *for the purpose of forfeiture*" within the meaning of 28 U.S.C. §2680(c)(1). The Ninth Circuit has construed this provision as applying "only to property seized *solely* for the purpose of forfeiture." Foster v. United States, 522 F.3d 1071, 1075 (9th Cir. 2008) (emphasis added). As the Ninth Circuit further explained, "the fact that the government may have had the possibility of a forfeiture in mind when it seized [the] property does not detract from the application of the detention of goods exception." Id. Akeem's property of course eventually

---

[6] Judge Chin's decision in CCS International relies on both the relevant portion of the legislative history and an earlier district court interpretation of the same statutory language. See id. at *3 ("'[t]he bill amends the [FTCA] to allow for tort claims . . . based on the destruction of property while in the possession of any law enforcement officer if the property has been seized for the purpose of forfeiture. Of course, if seized property is successfully forfeited, no claim would be allowed'") (quoting 106 H.Rpt. 192) and id. at *4 ("Because plaintiff's [property] *was* forfeited, its claim does not fit under 28 U.S.C. §2680(c)(2)") (quoting Cosmomar Shipping Co. v. United States, 231 F. Supp.2d 1353, 1357 (S.D. Ga. 2002) (emphasis in original).

9

became subject to administrative forfeiture, see generally 19 U.S.C. §§ 1607-1610; 19 C.F.R. §§ 162.45-.46, and that eventuality may well have been on the mind of the CBP officers when they seized it, but there is no colorable claim on this record that the property was taken *for that reason*, or, if so, *solely* for that reason.

CAFRA's re-waiver of sovereign immunity, therefore, does not apply, and the Court therefore lacks jurisdiction over an FTCA damages claim for the value of the damaged property.

### III. Jurisdiction over a Bivens Claim for Constitutionally Inadequate Notice

It appears, however, that the Court does have jurisdiction under the general federal question statute, 28 U.S.C. § 1331, over a claim that Akeem received constitutionally inadequate notice that his property would be forfeited and destroyed. See Diaz, 517 F.3d at 611 (citing additional authorities).[7] While no cause of action would lie against the United States, the possible vehicle for relief would be an action for damages under Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971); FDIC v. Meyer, 510 U.S. 471, 484-86 (1994) (Bivens authorizes federal constitutional claims but only against individual

---

[7] Courts entertaining similar claims and in search of the necessary waiver of sovereign immunity and grant of jurisdiction have examined such statutes as the Administrative Procedure Act, 5 U.S.C. §702(a) ("APA"), the Tucker Act, 28 U.S.C. 1491, and the Little Tucker Act, 28 U.S.C. § 1346 (a)(2). Their conclusions are not entirely consistent: with respect to the APA, compare Adeleke, 355 F.3d at 152 n.7 (APA not applicable because it waives sovereign immunity only with respect to claims other than for money damages) with Boero v. Drug Enforcement Agency, 111 F.3d 301, 305 n. 4 (2d Cir. 1997) (claim of procedurally deficient forfeiture can be construed as arising under APA as a challenge to final administrative action for which there is no other remedy); with respect to the Little Tucker Act, compare Adeyi v. United States, 06 CV 3842 (ARR), 2008 WL 793595, *6-7 (E.D.N.Y. Mar. 25, 2008) (Little Tucker Act applies only when the damages sought are required by the Fifth Amendment's takings clause; statute of no avail, therefore, to claimant alleging deprivation of Fifth Amendment right to due process) with Boero, 111 F.3d at 305 n. 4 (Little Tucker Act is an alternative source of jurisdiction over procedurally deficient forfeiture claim that does not exceed $10,000) and Adeleke, 355 F.3d at 152 (same, impliedly). Having already identified a source of jurisdiction, however, the Court need not reach the question of whether an additional source is available.

10

agents).

Although the government elected not to address the question in its motion, the Court has serious concerns about the constitutional adequacy of CBP's decision to send notice of forfeiture to Nigeria while Akeem was in federal custody and his exact location was easily ascertainable. Accordingly the Court construes Akeem's motion as a complaint commencing a Bivens action.

The controlling principles are long established. "The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" Dusenbery v. United States, 534 U.S. 161, 167 (2002). As Dusenbery made clear, what the Due Process Clause requires of the United States is not lessened in the administrative forfeiture context; to the contrary, Dusenbery held that the notice requirements of the administrative forfeiture statute, 19 U.S.C. §1607, are coextensive with those of the constitution, and are to be measured by the framework first announced in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950). Dusenbery, 534 U.S. at 168.

Under Mullane,

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.

339 U.S. at 314.

To be sure, "the Due Process Clause does not require . . . heroic efforts by the [g]overnment," Dusenbery, 534 U.S. at 170, nor actual receipt of notice in all cases. Id. at 171. "But when notice is a person's due, process which is a mere gesture is not due process." Mullane, 339 U.S. at 315. Rather, "[t]he means employed must be [what] one desirous of

11

actually informing the absentee might reasonably adopt." Id. The "constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected . . . or . . . that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." Id.

The Supreme Court long ago made clear that under Mullane, the mailing of a notice of forfeiture to the home address of an individual whom the government "knew" was incarcerated was constitutionally inadequate. Robinson v. Hanrahan, 409 U.S. 38, 40 (1972) (per curiam). Likewise, numerous lower courts have found possible due process violations where notice of forfeiture is not sent to the correct custodial address of an individual actually or constructively known to be in government custody. See, e.g., Torres v. $36,256.80 U. S. Currency, 25 F.3d 1154, 1161 (2d Cir. 1994) ("where the mailed notice of forfeiture is returned undelivered, the intended recipient is known by the notifying agency to be in government custody, and the agency fails to take steps to locate him in order to effectuate delivery of the notice, we hold that such notice does not satisfy the requirements" of 19 U.S.C. §1607); Boero v. DEA, 111 F.3d 301, 303-307 (2d Cir. 1997) (due process denied where notice of administrative forfeiture was sent to federal facility for inmate who had been transferred to state facility, was returned as undeliverable, and no follow-up notice attempted); Dosunmu v. United States, 361 F. Supp.2d 93, 98-99 (E.D.N.Y. 2005) (DGT) (notice of administrative forfeiture constitutionally inadequate because it was sent to address indicated on Customs declaration when, inter alia, Customs "should have known that plaintiff would end up in a federal detention facility" and "only needed to contact the INS, which could have easily provided the necessary information about his whereabouts"); Adeyi v. United States, 2008 WL 793595, *4 (E.D.N.Y. 2005) (ARR) ("notice is not reasonably calculated under all the circumstances to apprise a property owner of the

forfeiture if the government knew that the owner was not at the address to which notification was sent"); United States v. McGlory, 202 F.3d 664, 667-74 (notice of administrative forfeiture sent to claimant's last known address and care of the USMS at the federal courthouse, rather than directly to facility where claimant was detained, violated due process; court "hold[s] that, at a minimum, due process requires that when a person is in the government's custody and detained at a place of its choosing, notice of a pending forfeiture proceeding must be mailed to the detainee at his or her place of confinement").

Under the totality of circumstances revealed on this record, and the cited authorities, which involve materially similar facts, the Court concludes that the sending of notice of forfeiture to Akeem in Nigeria was constitutionally indefensible. The critical fact is that Akeem was in the custody of the federal government, uninterruptedly and at various facilities of the government's choosing, from the day his property was seized on February 21, 2008 through the time it was destroyed in March 2009. On the particular day that CBP mailed the notice of forfeiture to Nigeria, as government records document and this Court learned from Probation simply for the asking, Akeem had just been transferred from the USMS to ICE. On these facts, it is not even open to the government to assert that it did not know where Akeem was, or to plead that only "heroic efforts," Dusenbery, 534 U.S. at 170, would have disclosed the custodial journey Akeem traveled under government auspices.

The CBP's search for Akeem on the inmate locator website in March 2008, which revealed that Akeem was "released," does not materially change the analysis. To be sure, it is far from ideal that the BOP chooses to report a prisoner's transfer to a facility under contract with the BOP as a "release," but the CBP agent's reliance on that partial (or mis-)information is ultimately irrelevant to the constitutional inquiry, which examines the conduct of the federal

government as a whole. See Dusenbery, 534 U.S. at 167 (the Due Process Clause of the Fifth Amendment "prohibits the *United States* . . . from depriving any person of property without 'due process of law'") (emphasis added). Further, that information was more than five months old by the time CBP mailed the statutorily required notice of forfeiture. A branch of government "desirous of actually informing the absentee," Mullane, 339 U.S. at 315, should, at a minimum, make a time-relevant check of its records. Indeed, under the particular circumstances of this case—an arrest for *passport* fraud—CBP's reliance on the stale BOP web information without even checking with Immigration smacks of "process which is a mere gesture" but "is not due process." Mullane, 339 U.S. at 315. The Court is also troubled by the fact that CBP elected not to undertake any further inquiry, either when the Nigerian transmittal was first returned, or at any point during the six months between the returned mailing and the destruction of Akeem's property in March 2009. In sum, it cannot be said that the notice sent to Nigeria was "reasonably calculated, under all the circumstances, to apprise [Akeem] of the pendency of the [administrative forfeiture] action." Mullane, 330 U.S. at 314.

**CONCLUSION**

One unfortunate feature of this matter has yet to be addressed. As the foregoing account should make abundantly clear, this lawsuit and the many like it could easily have been avoided. The Court hardly need spell out for the government what is self-evident: the most modest of basic housekeeping measures would spare persons entitled to the return of seized property from having to file lawsuits to get it back, and would prevent the occasional actionable claim from spiraling into a constitutional matter. Indeed, as the analysis here showcases, the constitutional question cannot even be reached until the Court has journeyed through the jurisprudential thicket of sovereign immunity in search of a grant of jurisdiction. Simply put, the government owes it to

14

the persons from whom it seizes property and the federal courts from whom those persons seek relief to do better.

The government's motion to dismiss for lack of jurisdiction is granted only with respect to Akeem's motion for equitable relief under Rule 41(g) of the Federal Rules of Criminal Procedure and any possible claim for damages under the Federal Tort Claims Act, as sovereign immunity bars those vehicles. The Court has jurisdiction, however, over a claim that Akeem received constitutionally inadequate notice that his property would be forfeited and destroyed, which the Court construes as a cause of action under <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971). Accordingly, to the extent the government seeks a grant of summary judgment on that claim, or to dismiss it for lack of jurisdiction, those branches of its motion are denied. The Clerk of the Court is directed to assign a Magistrate Judge to this matter, and upon such assignment, the case is referred to the Magistrate Judge to issue such orders as are necessary to ascertain the names of the federal agents to be substituted as <u>Bivens</u> defendants, to direct service on these defendants, and to oversee all pre-trial matters.

SO ORDERED.

Dated: Brooklyn, New York
      February 22, 2012                                      s/ Judge Raymond J. Dearie

                                                                 RAYMOND J. DEARIE
                                                                 United States District Judge